[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Statewide Grievance Committee (SGC) has filed a complaint against defendants Karen Zadora (Zadora) and Richard A. Forsey (Forsey), d/b/a Divorce Documentation Service of Connecticut, a/k/a The Documentation Company, charging the defendants with the unauthorized practice of law. No dispute exists that Zadora and Forsey are not lawyers. The gravamen of the complaint is that what Zadora and Forsey label a strictly clerical service in providing and typing forms for dissolution actions actually constitutes the provision of legal advice to customers. The SGC accordingly seeks an injunction prohibiting this unauthorized practice. Trial to the Court took place in Willimantic on July 9, 1998. For the reasons that follow, this CT Page 1899 Court enters judgment for the SGC.
 I. (a)
From the testimony and the exhibits introduced at trial, the Court finds the following facts. In 1991 Zadora began a business known as the Legal Documentation Company. In December 1991, the SGC initiated an investigation to determine whether the company was engaging in the unauthorized practice of law. After a hearing in April 1992, at which only Zadora testified, the SGC concluded that Zadora's services consisted only of typing legal forms for divorces, leases, real estate sales, and commercial transactions as directed by the customer and that that form of clerical service did not constitute unauthorized practice of law. The SGC also noted that Zadora was willing to delete the word "Legal" from her business name to avoid an appearance of impropriety.
Sometime in late 1992, defendant Forsey, who is Zadora's father, joined the business. In 1993, the SGC initiated another investigation against the defendants because it had received a business card of the "Legal Documentation Company" with the names of both Zadora and Forsey on it. The SGC conducted a hearing on April 6, 1994, at which time it took testimony from Zadora and Forsey. In a decision finalized on September 22, 1994, the SGC again concluded that the defendants had not engaged in unauthorized legal practice. The SGC found that the defendants had confined the business to uncontested divorces and were providing only clerical services. Apparently the defendants had been using up their old business cards but had recently changed their name to "The Documentation Company."
In June 1997, Zadora informed the SGC that the business had changed its name to "Divorce Documentation Service of Connecticut" (hereinafter the DDSC). For at least several months in early 1998, the defendants advertised the DDSC in various regional advertising journals in Connecticut such as the "Turnpike Buyer" of Putnam. The ads stated that the business was "Registered with the Conn. State Judiciary" and contained phone numbers for Zadora in Clinton and Forsey in the Plainfield/Sterling area. On May 28, 1998, after the SGC filed its complaint in this case, Zadora wrote the SGC that the business had removed the phrase "Registered with the Conn. State Judiciary" from its ads.[1]
CT Page 1900
 (b)
On November 4, 1996, Doreen A. Staplins of Taftville spoke to Forsey on the telephone concerning the preparation of divorce papers. Forsey inquired and took notes about such matters as the amount of time the parties were separated, the number of children, the amount of child support, and the nature of any property agreement. Staplins met Forsey at his office in Sterling for an interview on December 11, 1996. At the interview, which lasted at least forty-five minutes. Forsey asked about the children's names and birthdays, whether Staplins was receiving any public assistance, whether she wanted alimony and in what amount, whether Staplins was seeking child custody and support, and whether she was seeking a name change. In discussing these issues, Forsey referred to specific pages of a book he had with him entitled Do Your Own Divorce in Connecticut, which is written by three lawyers. Forsey supplied Staplins two blank standard financial affidavit forms and asked Staplins to return one filled out by her and one by her husband by March 17, 1997. Forsey also gave Staplins a sample of testimony in an uncontested divorce. Staplins signed a contract agreeing to pay $630 to The Documentation Company of Clinton, Connecticut for the "Clerical Preparation of Non-Contested Divorce Forms." The contract stated that the Company was "not allowed to give legal opinion, legal advice or make legal judgments of any kind."
By early February 1997, Staplins had paid the $630. During this time period. Forsey typed or printed from a computer a proposed summons, complaint, application for waiver of costs and fees, stipulation of facts, appearance form for her husband, and several other forms. Several documents listed a return date of April 15, 1997, a date that derived from the contemplated return by Staplins of the financial affidavits by March 17, 1997 and the filing of the complaint and summons at about that time. The proposed complaint contained allegations such as "[t]he marriage of the parties has broken down irretrievably" and requests for relief such as "[a]limony to the wife of $1.00 per year." The proposed stipulation called for "[p]hysical [c]ustody of the minor children to remain with the wife, subject to the husband's right of reasonable visitation" and "[w]elfare will take care of all the Medical [sic] for the minor children." Forsey admitted at trial that this language did not represent a verbatim typing of the verbal or handwritten statements of Staplins, but rather that he "developed" the language using his "common sense" based on the form books and the CT Page 1901 biographical information provided and requests made by Staplins. As Forsey put it, he "customized" the forms to an extent.
Staplins did not complete the return of both financial affidavits until May 1, 1997. On May 8, 1997, Forsey wrote Staplins that her late return of the financial affidavits necessitated his redoing five documents, apparently to change the return date. Forsey demanded an additional $100 for these changes. Forsey wrote: "Unfortunately this letter will make you angry. Where will you direct your anger, at us or yourself?"
Staplins attempted to call Forsey but could not reach him. She did not pay the additional $100. Staplins never received the draft complaint or other pleadings. At the time of this trial, Staplins remained married with four children.
 (c)
On May 2, 1997, Forsey went to the Killingly home of Loretta Raymond, who had phoned Forsey requesting his assistance in obtaining a divorce. Forsey provided Raymond with numerous documents including a hand-drawn diagram of a courtroom and a one page "Sample Testimony" that the defendants chose and edited slightly to fit Raymond's case. Forsey interviewed Raymond and made notes on his own form that the complaint should include a request for dissolution and equitable distribution of property but not include a request for alimony, child support, or custody. Raymond signed a contract calling for her to pay $735 in monthly $100 installments for the "Clerical Preparation of Non-Contested Divorce Forms." The contract also called for Raymond to fill out her financial affidavit and return it to Forsey by May 15, 1997.
By September 4, 1997, Raymond had paid the full $735. On September 5, 1997, Forsey wrote Raymond that her financial affidavits did not arrive on time and therefore an additional $100 was necessary to redraft documents, apparently, again, to change the return date. Although Raymond believed that she had supplied the financial affidavits on time, she paid the $100 to Forsey.
Soon thereafter Forsey supplied the documents to Raymond. The proposed complaint alleged simply that the plaintiff wife and husband were married in 1953 in Connecticut and that one party had resided in Connecticut for at least the past year. For relief it sought a decree of dissolution, an equitable distribution of CT Page 1902 property, and such other relief as the Court deemed equitable. A proposed stipulation stated that the marriage had broken down irretrievably and that neither party shall pay alimony to the other. Forsey also supplied a draft summons, military affidavit. application for waiver of costs and fees, claim for family relations list, and Department of Public Health form.
Raymond filed the complaint on October 3, 1997. This Court granted a dissolution of Raymond's marriage on March 5, 1998.
 II. (a)
General Statutes Sec. 51-88 (a) provides that any person who has not been admitted as an attorney in this State shall not (1) "[p]ractice law" or (2) "make it a business to practice law." The Court can punish violations of this statute by a fine, imprisonment, a finding of contempt, or injunctive relief. Seeid.; Practice Book Sec. 2-47(c). In this case, the SGC seeks injunctive relief against the respondents.
Because of the breadth of legal practice, "attempts to define the practice of law have not been particularly successful."Statewide Grievance Committee v. Patton. 239 Conn. 251, 254
(1996) (internal citation omitted). Our Supreme Court has, however, "consistently held that the preparation of legal documents is commonly understood to be the practice of law." Id.
The reason is that "[t]he preparation of legal documents involves difficult or doubtful legal questions . . . which, to safeguard the public, reasonably demand the application of a trained legal mind." Id. at 255 (internal citation and quotations omitted). Thus the Supreme Court has upheld the enjoining of a non-lawyer divorce document preparation service. Statewide GrievanceCommittee v. Harris, 239 Conn. 256 (1996), a service that prepared divorce, bankruptcy, corporation, and estate documents, Statewide Grievance Committee v. Patton, 239 Conn. at 253, and a service that prepared wills and trusts. Grievance Committee v.Dacey, 154 Conn. 129 (1966).
It is true that providing blank legal forms to customers to fill out does not necessarily constitute the practice of law.Dacey, 154 Conn. at 140-41. On the other hand, providing completed legal documents based on information that the customers furnish on a questionnaire does constitute the practice of law, CT Page 1903 as the Supreme Court held in Patton, 239 Conn. at 253-54. Indeed, "the determination that a given form should be followed without change is as much an exercise of legal judgment as is a determination that it should be changed in given particulars. In either case, legal judgment is used in the adaptation of the form to the specific needs and situations of the client." Dacey,154 Conn. at 141.
 (b)
As the respondents point out, the question here is one of the degree, if any, to which the respondents provide more than a mere typing service. This Court would not find that making spelling, grammatical, or mathematical corrections to the information provided by customers on legal forms constitutes the practice of law. Beyond that observation, this Court need not define the precise point at which the practice of law begins because in this case it is clear that what the respondents do goes beyond that point.
The clearest proof consists of the complaints and stipulations that the respondents drafted. As the respondents essentially concede, the customers did not supply or choose language found in the complaints such as "One party for more than the last year has resided continuously in the State of Connecticut" or "Welfare will take care of all the Medical for the minor children." Rather, the respondents chose this language. True, they apparently took this language from a form book. but in cutting and pasting this language or, as the respondents put it, in "customizing" the forms, the respondents exercised legal judgment in deciding what language to cut and paste. See Dacey,154 Conn. at 141.
A comparison of the two complaints and stipulations submitted in this case further demonstrates this point. The Raymond complaint contains only two allegations and three requests for relief. The Staplins complaint contains four allegations and eight requests for relief. The Raymond stipulation contains two paragraphs. The Staplins stipulation contains five paragraphs. In deciding, in the Staplins case, to put in the additional allegations, requests and paragraphs, most of which stem from the fact that Staplins had four minor children and Raymond had none, the respondents exercised an elementary form of legal judgment.
Ironically, even this elementary legal judgment was faulty in CT Page 1904 many respects. As the SGC observes, the Staplins complaint fails to include a required allegation concerning prior receipt of welfare. See Practice Book Sec. 25-2 (b). The prayer for relief confusingly requests that the defendant provide both "Children's support for the Plaintiff" and "Support of the minor children." Complicating matters is the fact that the complaint alleges that someone other than the defendant husband is the father of one of Staplins's five children. Similarly, the Raymond complaint fails to contain necessary allegations that the marriage has broken down irretrievably, that there are no minor children, and that neither party has received State or town assistance. See Conn. Gen. Stat. Sec. 46b-40(c): Practice Book Sec. 25-2; Form 504.1.
These errors and omissions are not the fault of the customers; they are the fault of the respondents. The respondents are not just providing a typing service The respondents interview their customers in person often at the customer's home. From the interview, the respondents take notes on an interview sheet. From the notes the respondents draft legal documents. This practice, when conducted by non-lawyers such as the respondents, is exactly what the Supreme Court in Patton found to constitute the unauthorized practice of law.
 (c)
The respondents claim that, when a customer has a question about what to request for their divorce, the respondents merely point to a page in the form book and say: "The issue is discussed on this page." The Court does not find this claim credible. When two people meet in person to discuss a business matter, conversation normally ensues. The respondents appeared to the Court to be shrewd business people; the customers who testified appeared overly trusting Given this environment, the Court cannot believe that the respondents confine themselves to the form book's table of contents. It is much more likely that, in an effort to appear helpful, the respondents provide some explanation of the substance of the page in question.
The respondents also stress that their contracts and advertisements repeatedly state that they are non-lawyers and that they do not give legal advice or make legal judgments. Quite simply, the Court finds that these statements are self-serving and inaccurate. The respondents, in fact, do not have a good track record for truthful advertising. As noted. the respondents formerly advertised that they were "Registered with Conn. State CT Page 1905 Judiciary." See Petitioner's Exhibit K. This advertising claim was also inaccurate, as Zadora admitted at trial.
Zadora contended at trial that she has a separate business from Forsey's, which business also happens to be named "Divorce Documentation Service of Connecticut," and that she is not responsible for his actions. The respondents did not raise this contention in an answer, see Practice Book Sec. 2-47(c), and the respondents did not argue it in their post-hearing brief. It is, of course, extremely unlikely that two genuinely separate businesses would each tolerate the other using the same business name. Indeed, Zadora's contention is belied by the fact that every document in evidence containing a letterhead of the company and every advertisement or business card in evidence contains either the names of both Zadora and Forsey or both their addresses or phone numbers. The testimony also established that Zadora created the company's standard business contract and created or revised some of the instructional information handed to customers by Forsey. The SGC's brief summarizes other evidence that Zadora and Forsey have worked together for years. See Petitioner's Post-Hearing Brief at 1-5. In short, the evidence reveals that Zadora and Forsey are partners in the same business. Given Zadora's attempt to create a fictitious separate business, it is especially important that this Court's injunction include her.
 III.
The final issue is the remedy for the unauthorized practice. Because the SGC is requesting the equitable remedy of an injunction and the assessment of costs and expenses, it is relevant to discuss the issue of harm to the public. There is no more accurate way of stating what happened to Doreen Staplins than to say that she got ripped off. For $630 she received nothing. It is true that her contract with the respondents provided that she would not receive her documents until she paid in full and that she had an obligation to submit financial affidavits by a designated date. But for the respondents to request from her an extra $100. after she had already paid the unreasonably high fee of $630 for. "Clerical Service only," merely to change the return date on five documents is to take advantage of an innocent consumer. As for Loretta Raymond, it is not clear why her alleged failure to supply financial affidavits by May 15, 1997 should necessitate a late charge of $100 when the contract itself contemplated that Raymond could have until about CT Page 1906 November to pay the full $735, at which point the parties agreed that Raymond would receive the draft pleadings. Moreover, the Court finds the total charge of $835 for the preparation of papers for an uncontested divorce involving no minor children to constitute an unreasonably high fee. especially given that the respondents made glaring and potentially fatal omissions in the pleadings they supplied. Indeed, many if not most of the forms provided by the respondents are available for free at the Clerk's office or can be found in Volume 2 of the Connecticut Practice Book at the courthouse library.
For all these reasons, the Court finds it appropriate to grant relief essentially as requested by the SGC. The SGC agrees that General Statutes Sec. 51-88 (a) does not prohibit the sale of books and pamphlets on how to do your own divorce or the provision of typing services for customer-completed forms chosen by the consumers. The Court accordingly will permit these activities. The Court adds that the respondents may, as part of their business, provide blank forms for customers to fill out even though most of these forms are available for free at the Clerk's office. As far as the Court can discern, these are the only lawful activities in which the respondents have engaged. Accordingly, in all other respects, the Court hereby enjoins respondents Karen Zadora, Richard A. Forsey, and the Divorce Documentation Service of Connecticut a/k/a the Divorce Documentation Company from doing the business of divorce documentation preparation or otherwise engaging in the unauthorized practice of law.
Costs and expenses are taxed against the respondents.
SCHUMAN, J.